IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

BRIDGET ANN HAAS,

                        Plaintiff,

      v.                                          OPINION AND ORDER

MARTIN O'MALLEY,                          21-cv-697
Commissioner of Social Security,

                        Defendant.

---

Plaintiff Bridget Haas seeks judicial review of a final decision of defendant Martin O'Malley, Commissioner of the Social Security Administration ("SSA"), finding that she was not disabled within the meaning of the Social Security Act. Specifically, Haas contends that the administrative law judge's ("ALJ's") analysis of her subjective symptoms was insufficient, the residual functional capacity ("RFC") was not supported by substantial evidence, and the identified occupations that she could perform conflicted with the RFC. For the reasons that follow, this court concludes that the ALJ's subjective symptoms analysis was sufficient and the RFC was supported by substantial evidence. Further, while there appears to be some conflict with some of the identified occupations and the ALJ's RFC, the court agrees that any conflict was harmless because the ALJ identified a substantial number of other occupations in the national economy that Haas could perform. Accordingly, the court will affirm the Commissioner's decision.

1

BACKGROUND

### A.  Application and Denial

Haas applied for disability insurance benefits and supplemental security income on October 24, 2019, initially claiming disability as of October 1, 2019.  (AR 538–539.)[1]  Haas alleged a variety of health impairments, including depression, a ruptured bicep, obesity, sleep apnea, a right knee injury, carpal tunnel syndrome, chronic pain, arthritis, anxiety, shortness of breath, heart aversion, panic attacks, high blood pressure, sleep problems, and cognitive disabilities.  (AR 356–357.)  Nevertheless, the local disability agency determined that Haas was not disabled initially and upon reconsideration.  (AR 376, 423.)  Because Haas then requested a hearing, a telephonic administrative hearing was conducted before ALJ Michael Schaefer. (AR 465, 508.)

### B.  Administrative Hearing

At the hearing, Haas's alleged disability onset date was amended to January 1, 2020, when she was 52 years old.  (AR 263, 669–670.)  Haas's counsel argued by that date, Haas was disabled due to a combination of physical impairments, including hand numbness, and mental health impairments, including depression.  (AR 264–265, 299.)  Haas's own testimony was guided by the ALJ's questioning on three, general topics:  limitations and abilities, work experience, and medical issues.

Haas specifically testified about several limitations, including not liking to drive more than 35–45 minutes at a time due to discomfort (AR 268), difficulties grasping items due to

---

[1] Citations are to the administrative record ("AR") and can be found at dkt. #9.

gradual hand numbness (AR 281, 288), general discomfort after sitting or standing for extended periods of time (AR 288–289), and difficulties sleeping through the night due to body pain and sleep apnea (AR 277–278).  At the same time, Haas identified some of her abilities, including being able to load and unload a dishwasher, making a meal, picking up certain items, and limited shopping.  (AR 280, 286-87, 289–290.)

Haas also testified that she worked one day a week as a personal care worker, plus ten hours a week as a convenience store food demonstrator, but did not work full-time due to hand numbness and problems lifting, bending, turning, and concentrating.  (AR 270–276.)  Haas had previously worked more hours as a cashier, but stopped because the work was too stressful, as well as mentally and physically painful.  (AR 270–271.)

As for her medical conditions, Haas described cardiac problems (AR 283), pelvic pain (AR 284), low energy and concentration for challenges (AR 287).  She testified about her medical care as well, including CPAP treatment for sleep apnea (AR 278), injections for hand numbness (AR 282), rehabilitation therapy for cardiac issues (AR 283), and her medication schedule. (AR 285.)

## C.  ALJ Decision

Considering Haas's and a vocational expert's testimony, as well as the medical record as a whole, the ALJ found that Haas was not disabled within the SSA's regulatory framework.  (AR 163–179.)  Specifically, the ALJ found that Haas had a number of severe, medically determinable impairments that significantly limited her ability to perform basic work activities, including:  right knee and right hand degenerative joint disease; lumbar dysfunction; bilateral carpal tunnel syndrome history; obesity; and depression and anxiety. (AR 166.) The ALJ also

acknowledged other, non-severe impairments, including hypertension, atrial flutter, left ruptured bicep history, sleep apnea, and restless leg syndrome. (AR 166.) Considering all of these impairments, the ALJ concluded that Haas retained an RFC to perform a reduced range of light work, with the following physical and mental limitations:

- occasionally climb ramps and stairs and occasionally balance, stoop, kneel, crouch or crawl;

- never climb ladders, ropes or scaffolds;

- frequently handle or finger with her bilateral upper extremities;

- avoid concentrated exposure to extreme heat, wetness, humidity, vibration and workplace hazards, including moving machinery and unprotected heights;

- alternate between sitting and standing at her work station every 20-30 minutes, without the need to leave the work station or otherwise be off-task as a result;

- understand, remember, or carry out simple instructions and routine tasks in a work environment with no fast-paced production rates and few duty changes;

- goal-oriented production rates, not assembly line-type work; and

- occasional interactions with the public, co-workers, and supervisors. (AR 168.)

Considering the RFC along with Haas's age, education, and work experience,[2] and relying on the vocational expert's testimony, the ALJ concluded that Haas was able to perform work that existed in significant numbers in the national economy. (AR 178–179.)  In

---

[2] As noted, Haas testified that she is a 53-year-old high school graduate, who worked six hours a week as a care giver and ten hours a week as a convenience store food demonstrator. (AR 265–270.) She also had experience as a restaurant waitress and cook, before cutting back to part-time work as a convenience store cashier.  (AR 271–274.)

particular, the ALJ concluded that Haas could work as an assembler, sorter, or packager. (AR 178.)

Haas appealed the ALJ's decision to the SSA's Appeals Council, who denied her request and thus made the ALJ's decision the final decision of the Commissioner. (AR 1-10.) Haas now seeks judicial review under 42. U.S.C. §§ 405(g), 1383(c).

OPINION

On appeal, Haas appears to raise three, basic arguments: (1) the ALJ's analysis of her subjective symptoms was insufficient; (2) the ALJ's RFC assessment was not supported by substantial evidence; and (3) the ALJ's vocational assessment conflicted with the RFC. The court addresses each argument in turn.

## I.    Subjective Symptoms

From what can be discerned in her unorganized brief, Haas argues that the ALJ failed to consider her subjective complaints properly in analyzing her abnormal medical findings, treatment history, reported activities, obesity, and how each affected other health issues. However, the ALJs conclusion that Haas's subjective symptoms were "not entirely consistent" with the evidence and record was adequately explained and not necessarily wrong.

When evaluating subjective symptoms, an ALJ considers a range of regulatory factors, including the objective medical evidence, the claimant's daily activities, allegations of pain, other aggravating factors, types of treatment received and medication taken, and "functional limitations." *Simila v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009); *See* 20 C.F.R. § 404.1529(c)(2)-(4). The ALJ must consider these factors when arriving at an adverse conclusion and must explain their reasoning as supported by the record. *Engstrand v. Colvin*,

788 F.3d 655, 660 (7th Cir. 2015). However, courts are to defer to an ALJ's evaluation of subjective symptoms unless patently wrong, *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), which means that the decision lacked any explanation or support. *Murphy v. Colvin*, 759 F.3d 811, 815-16 (7th Cir. 2014).

Here, the ALJ properly analyzed the abnormal findings in Haas' medical records. For example, Haas claims that the ALJ did not discuss a hand x-ray showing mild degenerative changes when, in reality, he expressly addressed the x-ray in crafting a handling/fingering limitation, explaining what evidence he considered (e.g., imaging of mild degenerative changes, no mention of CTS after steroid injections, fairly good grip strength, and Haas' testimony that she could hold onto things for short periods of time). (AR 170) Similarly, Haas argues that the ALJ did not properly consider her reports of mental health challenges, when the ALJ actually explained why Haas's reports were not consistent with the medical evidence (e.g., medical exam notes indicated that Haas was alert, oriented with normal speech and fair judgment, and any exams where a "flat affect" was noted was otherwise unremarkable). (AR 171) While the ALJ did not discuss every claimed abnormally that Haas identified, "an ALJ need not mention every piece of evidence," as long as the ALJ has not only "cherry-picked facts" to support his conclusion. *Green v. Colvin*, 605 F. App'x 553, 558–59 (7th Cir. 2015). Additionally, several, so-called "significant abnormal" findings mentioned in the medical record to which Haas refers certainly appear *in*significant – *mild* tenderness, *mild* degenerative changes, *moderate* disc space narrowing, *fair* eye contact, *fair* insight, and *fair* judgment. Thus, the ALJ's conclusion that the objective evidence did not support the severity of subjective symptoms Haas described was adequately support in his decision.

6

The ALJ also properly considered Haas's treatment history. While Haas criticizes the ALJ for noting that she did not seek more extensive treatment, an ALJ may certainly consider and evaluate the extent of treatment and conclude that such treatment was inconsistent with an applicant's complaints. *Simila v. Astrue*, 573 F.3d 503, 519 (7th Cir. 2009). In fairness, the ALJ did not directly address any reasons certain treatments may have been delayed, but he did adequately discuss other, sound reasons for reaching his credibility determinations, such as Haas's ability to perform part-time work at two different jobs. Accordingly, any failure to discuss Haas's treatment history in greater detail appears to be harmless error.

Haas next argues that the ALJ failed to consider the effect of her obesity on her other impairments, but an ALJ's failure to explicitly discuss a claimant's obesity is also harmless error as long as it is apparent that obesity factored "indirectly" into his decision. *See Richards v. Astrue*, 370 F. App'x 727, 733 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 736-37 (7th Cir. 2006); *Skarbek v. Barnhart*, 390 F.3d 500, 504, 105 Fed. Appx. 836 (7th Cir. 2004). As discussed below, the ALJ here crafted Haas's RFC limitations based directly on the medical opinions expressed by physicians familiar with her obesity. *See Hisle v. Astrue*, 258 F. App'x 33, 37 (7th Cir. 2007). Thus, Haas's obesity was necessarily considered by the ALJ in crafting the RFC.

Finally, Haas argues that the ALJ improperly relied on her reported activity, but the ability to perform some work *can be* a basis for *discounting* at least some subjective allegations. *See Berger v. Astrue*, 516 F.3d 539, 546 (7th Cir. 2008). The ALJ's decision reflects that he adequately considered Haas's reported capabilities in the context of the record as a whole, assessing her subjective symptoms and offering multiple reasons grounded in the evidence that support his determination. Thus, on balance, any flaws in the ALJ's reasoning are not enough

to undermine his consideration of Haas's subjective symptoms.  *See Halsell v. Astrue*, 357 F. App'x 717, 722–23 (7th Cir. 2009) (not all of the ALJ's reasons must be valid as long as enough of them are).

## II.    RFC Assessment

Haas also contends that the following limitations in the RFC are not supported by substantial evidence:  (1) the ability to alternate between sitting and standing every 20-30 minutes, without the need to leave the work station or be off-task; (2) frequent bilateral handling and fingering; and (3) mental health limitations relating to concentration, persistence, or pace.  Haas further contends that in crafting the RFC, the ALJ (again) did not sufficiently discuss how obesity impacted her other limitations.

An RFC must account for a claimant's physical and mental limitations, as well as reflect an assessment of what, if any, work the claimant can perform.  *See* 20 C.F.R. § 416.945(a). Said another way, a claimant's RFC is to be a formulation of the most one can still do despite their limitations.  *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).  As a result, the determination of a claimant's RFC requires the ALJ's consideration of "all the relevant evidence" in the record, *Taylor v. Kijakazi*, No. 21-1458, 2021 WL 6101618, at 2 (7th Cir. Dec. 22, 2021), and the question for this court on review is whether the ALJ's decision was supported by "substantial evidence."  However, this is not a demanding standard.  *Id.* at 2. Rather, substantial evidence is "more than a mere scintilla," meaning only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).  In applying this standard, the reviewing court may not "reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or

substitute our judgment for the ALJ's determination." *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022). The court's inquiry defers to the presiding ALJ, who has the benefit of seeing the witnesses up close at a hearing. *Wegerer v. Kijakazi*, No. 22-CV-123-JDP, 2023 WL 6307407, at 3 (W.D. Wis. Sept. 28, 2023). Even so, the court will not "rubber-stamp" the ALJ's decision without a critical review of the evidence. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) (as amended, Dec. 13, 2000). Accordingly, it addresses the record support for each of the three limitations criticized by the claimant, along with consideration of her obesity.

### A. Sit/Stand Limitation

The ALJ concluded that Haas's RFC was limited by the need "to alternate positions at the workstation between sitting and standing as often as every 20–30 minutes for approximately 5-10 minutes at a time." (AR 177.) However, Haas criticizes the ALJ for not adequately explaining how he arrived at the 20–30 minute time range, choosing to ignore the explanations in his decision for adopting both the general sit/stand option *and* the specific time range.

To arrive at the *general* sit/stand option, the ALJ considered two sources -- the State Disability Determination Service (DDS) (AR 173) and the opinions of Dr. Richardson, who performed a consultative examination on Haas. (AR 174, 176.) The DDS concluded that Haas could perform a range of light work, such as frequent stopping, kneeling, and crouching. (AR 172.) The ALJ found the DDS's conclusions partially persuasive, since they did not consider the combined effect of Haas's mild orthopedic issues *and* morbid obesity, while still finding that a sit/stand option was necessary to avoid exacerbation. (AR 173.) Additionally, the ALJ noted Dr. Richardson's conclusion that it would be hard for Haas to "sustain work

activities where she would have to stand, sit or walk for any *long* periods of time." (AR 176 (emphasis added).) While Dr. Richardson did not opine as to a specific time range for each activity, his statements generally supported a limitation to prevent *prolonged* standing or sitting. Moreover, the ALJ stated that he relied on this statement when including the sit/stand option. (AR 176.)

Had the ALJ stopped there -- if he had stated simply that "Haas cannot sit or stand for a long time" -- he may well have fallen short of the need to be specific as to the frequency an individual must alternate between sitting and standing. *Prater v. Saul*, 947 F.3d 479, 481 (7th Cir. 2020). For example, a broad RFC limitation that Haas could "not sit or stand for a long time" would be too imprecise in failing to "specify a particular frequency." *See Arnett v. Astrue*, 676 F.3d 586, 593 (7th Cir. 2012). Fortunately, the ALJ provided the requisite specificity here.

In particular, to arrive at an actual time limit for the sit/stand option, the ALJ explained that he considered Haas's testimony that she could sit in a car for "anywhere from 35 minutes to 45." (AR 172, 268.) Haas also testified that she could be on her feet at one time for "[a]bout 20 minutes," which is also consistent with the sit/stand option adopted by the ALJ. (AR 288–289.) Admittedly, Haas offered contradictory testimony that she could not stand for 20 minutes without holding onto something, but an ALJ is free to discount the testimony on the basis of other evidence. *See Johnson v. Barnhart*, 449 F.3d 804, 805 (7th Cir. 2006). And that evidence was present in this record. First, Dr. Richardson's conclusion that Haas could not sit or stand for a long time, which the ALJ stated he relied on, was based on Haas's reports that she could "stand maybe 30-45 minutes at a time but needed to shift around some, could sit, at most, 30 minutes before needing to get up and move around." (AR 176.) Second, Haas's

uncontradicted testimony established she could sit for 35-45 minutes.  (AR 172.)  Thus, under the sit/stand option, allowing for Haas standing for 20-30 minutes and sitting for 5-10 minutes (or sitting for 20-30 minutes, then for 5-10 minutes) is consistent with the abilities described by Haas herself *and* the limits established by medical opinion.

Nevertheless, Haas cites *Hurley v. Calvin*, 2014 WL 939441 (N.D. Ind. 2014), for the proposition that the ALJ must offer an explanation as to how a specific time limit was determined. In *Hurley*, the ALJ crafted specific sitting and standing time limitations but offered *no* explanation for those limits.  *Id.* at 14–15.  Here, the ALJ did explain precisely how he arrived at the time limit, explaining that Haas's ability to sit while driving 35–45 minutes at a time *was* "considered in arriving at" the sit/stand limitations in Haas's RFC.  (AR 172.)  The ALJ also expressly relied on Dr. Richardson's finding, which was based at least in part on Haas's reports about her sitting and standing abilities.  Moreover, considering that the sit/stand option was shorter than 35–45 minutes, the RFC limitation was actually more favorable to Haas than perhaps the medical evidence and her testimony would have required.  *See Taylor v. Kijakazi*, 2021 WL 6101618, at *3 (7th Cir. Dec. 22, 2021).

### B. Handling and Fingering

Next, Haas challenges the ALJ's finding that she could "frequently handle or finger with her bilateral upper extremities"[3] (AR 168), ignoring substantial evidence supporting this conclusion as well.  To begin, Haas reported two primary hand issues: arthritis and bilateral

---

[3] "Occasionally" means occurring from very little up to one-third of the time (i.e. no more than about 2 hours of an 8-hour workday), while "frequently" means occurring one-third to two-thirds of the time (i.e. 2.7 to 5.3 hours of an 8-hour workday).  SSR 96-6; SSR 83-10.

carpal tunnel syndrome.  (AR 170.)  Haas testified that because of these issues, she experienced hand pain and numbness, which became progressively worse with activity.  (AR 277.)  For example, Haas could pick up a ten-pound item with either hand, but her hands would go numb after picking it up repeatedly. (AR 288).  While the ALJ considered Haas's hand pain and discomfort when crafting the RFC, he explained that her subjective complaints were not entirely consistent with the record.  An ALJ may not disregard an applicant's subjective complaints of pain simply because they are not fully supported by medical evidence, but may consider the medical evidence more heavily when the claimants testimony contradicts it. *Sienkiewicz v. Barnhart*, 409 F.3d 798, 804, 119 F. App'x 811, 817 (7th Cir. 2005) ("a discrepancy between the degree of pain claimed by the applicant and that suggested by medical records is probative of exaggeration").

In particular, the ALJ found that while Haas reported difficulty holding things due to carpal tunnel syndrome, medical records made little to no mention of carpal tunnel syndrome after Haas received bilateral wrist injections.  Indeed, the *only* mention of carpal tunnel syndrome in subsequent reports was that her left side carpal tunnel syndrome symptoms were "baseline."  (AR 172.)  Further, while Haas testified that she experienced chronic pain due to arthritis, the ALJ explained that imaging showed only mild degenerative changes and no convincing erosion or remarkably soft tissue.  (AR 170.)  In addition, the ALJ explained that consultative exam notes indicated that Haas' grip stench was fairly good. (AR 172).

Haas next criticizes the ALJ for not explaining why he assigned a limitation of "frequent," instead of "occasional," but the "frequent" limitation was supported by medical opinion.  Specifically, after initial review and reconsideration, the DDS concluded that Haas could perform light work with "frequent," bilateral handling and fingering.  (AR 172).  Again,

the ALJ only found the DDS statements partially persuasive, but explained that was because DDS did not fully consider Haas's orthopedic issues and morbid obesity.  (AR 173.)  As the ALJ also explained, while crafting the "frequent" handling and fingering limitation to account for those considerations, he did *not* find Dr. Richardson's statement persuasive because they were vague, not articulated in vocationally relevant terms, and inconsistent with findings in Haas's contemporaneous, medical exam records.  (AR 176.)  Having adequately explained why he accepted some statements but not others, the ALJ has provided a sufficiently accurate, logical bridge between the evidence and the conclusion that Haas could frequently finger or handle.  *See Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).  Considering that the ALJ does not have to consider *every* line of medical opinion, the fingering and handling limitation is also supported by substantial evidence.  *See Diaz v. Chater*, 55 F.3d 300, 307-08 (7th Cir. 1995).

### C. Mental Health Limitations

The ALJ next concluded that due to Haas' mental impairments, she could understand, remember or carry out simple instructions and routine tasks (at a General Educational Development Reasoning level of two or below) with few changes in duties or expectations.  (AR 168–169.)  Still, the ALJ limited Haas to a work environment with no fast-paced production quotas and only occasional interactions with the public, co-workers or supervisors.  (AR 168.)  Haas also argues that these mental health limitations were not adequately explained, but in assessing Haas's mental health limitations, the ALJ plainly addressed the medical records, opinion evidence, and Haas's daily activities.

Specifically, the ALJ crafted mental health limitations based on the DDS statements that Haas would have occasional difficulty remembering detailed instructions but would

13

generally be able to focus on two-to-three steps.  (AR 173.)  Similarly, the DDS concluded that Haas should have a fairly regular set of work duties and could occasionally interact with others. (AR 173.)  The ALJ incorporated these statements into the RFC limitations on interactions with others and stable work duties, while rejecting the two-to-three step limitation as too specific and explaining why Haas was limited to routine tasks at GED, finding two or below to be more appropriate.  (AR 173.)

The ALJ further crafted mental health limitations based on the opinion of Dr. Weber, who performed a psychiatric consultative examination on Haas.  While the ALJ found Dr. Weber's opinion partially persuasive, he again explained why:  Dr. Weber relied heavily on subjective reports provided by Haas and seemed to simply restate them.  (AR 175.)  However, the ALJ also indicated that Haas' performance on Dr. Weber's mental status evaluation was "quite good," and factored that result into the RFC.  (AR 175.)  In particular, the ALJ noted that during her exam, Haas was able to maintain a generally adequate stream of mental activity, possessed intact remote memory, and had no apparent problem in following the conversation at any point during the assessment.  (AR 174.)  Accordingly, the ALJ explained that "the entirety of the evidence and the combined effect of the psychiatric symptoms" supported the adopted limitations in order to "avoid exacerbating [Haas's] mental health symptoms."  (AR 175.)

In part, the ALJ further crafted the mental health limitations based on Dr. Richardson's opinion.  While the ALJ found that opinion partially persuasive, he also explained why:  Dr. Richardson's statements were vague and not articulated in vocationally relevant terms.  (AR 176.)  Even so, the ALJ indicated that with the limitations suggested by Dr. Richardson, it would be difficult for Haas to work in a highly stressful environment, which required intense

focus or remembering detailed instructions.  (AR 176.)  Thus, these limitations were also included in the RFC.

The ALJ also accepted some other medical opinions, but not all.  While the ALJ must consider opinions offered by medical experts, he is not *bound* by those opinions so long as he has evaluated them in the context of the expert's specialty and expertise, the supporting evidence, and any other explanations.  *Haynes v. Barnhart*, 416 F.3d 621, 630 (7th Cir. 2005).  Since the ALJ adequately explained how Haas's mental limitations were crafted to ensure she was limited to work that was comparatively low in mental demands (AR 173), the mental health limitations were also supported by substantial enough evidence.

### D. Obesity

As for Haas's argument that the ALJ failed to consider the combined effects of obesity on these three and other limitations in crafting the RFC, he actually frequently identified Haas's obesity as a severe impairment *and* identified how its functionally limiting effects were already incorporated into the RFC.  Specifically, the ALJ explained that while Haas was in fact morbidly obese, the relevant exams were typically unremarkable and within normal limits, with Haas demonstrating normal musculoskeletal range of motion, intact symmetrical motor strength, and anormal gait.  (AR. 171.)  Moreover, in considering the DDS opinions on Haas' physical abilities in particular, the ALJ further included the sit/stand option and other postural limitations *because* the DDS had not appeared to consider Haas's obesity.  (AR 173.)  The ALJ also considered Haas' obesity in the context of assessing Dr. Richardson's statements, which reinforced the postural limitations.  (AR 176.)  Accordingly, the ALJ adequately discussed the functional limitations that resulted from obesity, demonstrating that the ALJ adequately

considered Haas obesity.  *See Skarbek v. Barnhart,* 390 F.3d 500, 504 (7th Cir.2004).  The RFC was supported by substantial evidence.

### III.     Vocational Assessment

Finally, Haas criticized the ALJ's conclusion that considering her age, education, work experience, and RFC, she was capable of making a successful adjustment to work that existed in significant numbers in the national economy.  (AR 179.)  However, in reaching that conclusion, the ALJ expressly relied on the vocational expert's opinion that with the RFC adopted by the ALJ, Haas could perform the requirements of representative occupations such as "assembler" (DOT 706.687-010, with about 70,000 jobs in the national economy), "packager" (DOT 920.685-082 with about 109,000 jobs in the national economy), or "sorter" (DOT 569.687-002, with about 146,000 jobs in the national economy).  (AR 178.) Nevertheless, Haas argues that the vocational expert testimony and the RFC limitations conflict with the DOT definition of each of these occupations.[4]

If a vocational expert's testimony appears to conflict with the DOT, the ALJ "must obtain a reasonable explanation for the apparent conflict," even if the claimant did not object at the hearing.  *Brown v. Colvin*, 845 F.3d 247, 254–55 (7th Cir. 2016).  Further, the ALJ is required to *ask* the expert whether the testimony being offered is consistent with the DOT, as well as investigate and resolve any apparent conflicts between the two.  *Id.*  However, because Haas did not identify any conflicts at the hearing, the conflicts must have been obvious enough

---

[4] "DOT" refers to *Dictionary of Occupational Titles* published by the Dept. of Labor. Employment and Training Administration (1991), although the definitions and kinds of DOT occupations are adjusted over time, as are their job numbers locally and in the national economy.

that the ALJ should have picked up on them.  *Overman v. Astrue*, 546 F.3d 456, 463 (7th Cir. 2008); *Surprise v. Saul*, 968 F.3d 658, 662 (7th Cir. 2020).

As Haas points out, the assembler and packer occupations arguably conflict with her RFC limitations.  In particular, the DOT 706.687-030 definition of assembler contemplates being able to "tend machines … on assembly line" or perform "repetitive bench or line assembly operations to mass-produce products."  In contrast, the RFC formulated by the ALJ directs that Haas avoid workplace hazards, "including moving machinery," and that her work should *not* be "assembly line-type work."  (AR 168–169.)  The fact that assembly line and machine work are discussed in the definition at least suggests that the ALJ should have resolved the apparent conflict.  Similarly, the DOT 920.685-082 definition of "packer" contemplates being able to tend a "packing machine and press" and push certain buttons to lower hydraulic rams or chargers.  This, too, appears to contradict the RFC limitation that Haas avoid moving machinery and assembly-line work, which the ALJ arguably should also have addressed.

That said, any error in failing to address these contradictions is harmless because the ALJ also identified the "sorter" occupation, for which Haas has identified *no* inconsistencies with her RFC.  To the contrary, the DOT 769.687-042 definition states that a sorter "[s]orts and stacks cork sheets, used for making cork gaskets, according to size," and "[e]xamines sheets and rejects those with defects, such as cracks or holes."  Since this description is consistent with Haas's RFC to perform less than the full range of light work, Haas appears capable of performing the work of a sorter without offending the limitations in the RFC, just as the vocation expert determined.

Conceding as much, Haas also argues that because the vocational expert's opinion conflicted with the DOT definitions of a packager and assembler, the reliability of the expert's

entire testimony is in doubt. However, a mistake in an expert's testimony does not require the ALJ to reject all of it. *Mitchell v. Kijakazi*, No. 20-2897, 2021 WL 3086194, at *3 (7th Cir. July 22, 2021). Rather, the ALJ may rely on imperfect VE testimony if a claimant does not question the basis for the testimony at the time of the hearing, at least where the error is not apparent. *See Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002) (ruling that the ALJ may rely on unchallenged VE testimony that conflicted with DOT); *Barrett v. Barnhart*, 355 F.3d 1065, 1067 (7th Cir. 2004)(ruling that the ALJ may rely on unchallenged, perfunctory VE testimony); *Liskowitz v. Astrue*, 559 F.3d 736, 744 (7th Cir. 2009) (ruling that the ALJ was entitled to credit expert testimony when claimant did not challenge its evidentiary basis at hearing). Here, Haas did not challenge the vocational expert's reliance of her ability to work as a sorter during the hearing, and raising a discrepancy only after the hearing is too late. *See Donahue v. Barnhart*, 279 F.3d 441, 446–47 (7th Cir. 2002). Even if it were not, there appears to have been no error as to Haas's ability to perform this work with her RFC.

Moreover, the vocational expert testified and the ALJ accepted that 146,000 sorter jobs exist in the national economy, which is well within what is considered sufficient to find a claimant not disabled. *See Brown v. Colvin*, 845 F.3d 247, 255 (7th Cir. 2016) (finding harmless error despite an apparent conflict because there remained 5,303 appropriate jobs for the claimant); *Weatherbee v. Astrue*, 649 F.3d 565, 572 (7th Cir. 2011) (the existence of 1,000 jobs nationally is sufficient); *Smith v. Kijakazi*, No. 22-cv-163-slc (W.D. Wis. July 18, 2023) (the existence of 17,000 jobs is sufficient); *Sommerfeldt v. Kijakazi*, 21-cv-83-jdp (W.D. Wis. Sept. 12, 2022) (the existence of 27,500 jobs is sufficient). For this reason, the ALJ's failure to resolve apparent conflicts with respect to the assembler and packager occupations is harmless and requires no remand.

18

Accordingly,

ORDER

IT IS ORDERED that the decision of defendant Martin O'Malley, Commissioner of the Social Security Administration is AFFIRMED, and plaintiff Bridget Ann Haas's appeal is DISMISSED.  The clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered this 2nd day of April, 2024.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge